IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| MARY A. PELUSO, | : | Bankruptcy No. 09-26239-JAD |
| Debtor. | : | Chapter 7 |
| | : | |
| NATALIE LUTZ CARDIELLO,<br>Trustee of the Estate of<br>MARY A. PELUSO, | : | |
| Plaintiff, | : | |
| v. | : | Adversary No. 10-2143-JAD |
| 4700 MCKNIGHT ASSOCIATES,<br>LTD, | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

The matter before the Court is the *Complaint* to recover money/property (the Complaint") filed by the Natalie Lutz Cardiello, Trustee of the Estate of Mary A. Peluso (the "Plaintiff"). This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Fed.R.Bankr.P. 7052. This Court has proper subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the parties have consented to the entry of a final order by this Court pursuant to Fed.R.Bankr.P. 7008. For the reasons discussed below, the Court finds that the Plaintiff is not entitled to a turnover of assets from 4700 McKnight Associates, LTD (the "Landlord").

## I.

Mary A. Peluso (the "Debtor"), is the sole member and 100% owner of Miss Mary's Play Time, LLC ("Miss Mary's"). The Landlord is a Pennsylvania corporation having a mailing address of 4700 McKnight Road, Pittsburgh, Pennsylvania 15237.

On or about May 7, 2007, Miss Mary's entered into a Lease with the Landlord for 1400 square feet of space located in a shopping center situate on the real property commonly known as 4700 McKnight Road, Pittsburgh, PA 15237 (the "Leased Premises"). Also on or about May 7, 2007, Miss Mary's and the Landlord executed an Addendum to Lease (the "Addendum"), which provides in pertinent part:

> **Section 3.01(b)**  A deposit of <u>FOUR THOUSAND EIGHTY THREE DOLLARS and 33/100 ($4,083.33) DOLLARS</u> has been placed with Landlord by Tenant (the "Deposit"). Deposit is refundable at completion of Lease, provided Tenant has fulfilled Tenant's obligations under the Lease . . .
>
> . . .
>
> *In addition, Tenant has placed <u>TWENTY FOUR THOUSAND FIVE HUNDRED DOLLARS ($24,500.00) Dollars</u> in escrow with Landlord as security for Tenant's obligations under this Lease (the "Tenant's Security"), to be transferred from escrow to Landlord pursuant to the terms of this Lease. Any amounts due to Landlord from Tenant pursuant to Tenant's early cancellation of this Lease under this Section 3.01, or due to Tenant's default under the terms of this Lease, shall be transferred from the Tenant's Security to Landlord . . .*
>
> . . .

> If at any time after the first year *of the Initial Lease Term and prior to the conclusion of the Initial Lease Term*, Tenant elects not to continue with *the* Lease (via written notice to Landlord) then, *Landlord shall be entitled to either the Tenant's Security, or that portion of the Tenant's Security equivalent to monthly Rent payments for each month following such Tenant's early cancellation* until Landlord is able to secure a replacement, *or that portion of the Tenant's Security equivalent to monthly rent payment due from Tenant until the end of the Initial Lease Term, whichever amount is least...*
>
> . . .
>
> **Section 13.02** In the event of the occurrence of any default or breach of this Lease by the Tenant as set forth in Section 13.01 hereof, there shall become due and payable (i) *$24,500.00 or the entire Rent for the balance of the Initial Lease Term then in effect, as the case may be (as if by the terms of this Lease it were all payable in advance), whichever is less*, (ii) all Additional Rent which....The maximum amount of accelerated rent due is equivalent to one (1) years worth of lease payments ($24,500) provided such default or breach of lease does not occur prior to one (1) year of tenant occupancy of the space, *and Landlord shall first recover all amounts due from the Tenant's Security then seek the balance, if any, from Tenant or any guarantees of this Lease* . . . .

(Plaintiff's Ex. 2). In accordance with Section 3.01(b) of the Addendum to Lease, Miss Mary's delivered a total amount of $28,583.33 to the Landlord in the form of the Deposit and Tenant's Security (collectively, the "Security"). Miss Mary's began occupying the Leased Premises in August of 2007. (See Transcript of Hearing Held September 21, 2010, p. 78, lns. 3-7).

Within the first year, Miss Mary's began failing to make rental payments as required by the Lease. (See Plaintiff's Ex. 3). Subsequently, in November of 2008, the Debtor decided to cease the business operations of Miss Mary's. (Hr'g Tr. 10-11). After ceasing business operations, Miss Mary's began removing personal

property from the Leased Premises and by the middle of December had completely vacated the building. (Hr'g Tr. 17, lns. 7-17). Miss Mary's never informed the Landlord in writing of its election not to continue with the Lease.

By letter dated December 3, 2008 (the "Termination Letter"), the Landlord advised the Miss Mary's and the Debtor that Miss Mary's was in default of the Lease. The Landlord further advised that, "[A]ll . . . rights, remedies, deposits and security are hereby converted to the Landlord in accordance with the terms of your lease. In addition, as of the above date [i.e., December 3, 2008] your lease is hereby terminated." (Plaintiff's Ex. 4)

On January 9, 2009, the Landlord amended its lease with a then current tenant, Geico Insurance ("Geico"), which relocated its business into 800 square feet of the Leased Premises formerly occupied by Miss Mary's. (See Plaintiff's Ex. 7, Lease Amendment). By letter dated January 9, 2009, Miss Mary's, through counsel, requested a refund of the Tenant's Security based on Miss Mary's belief that the Leased Premises were re-let to a "replacement tenant." (See Plaintiff's Ex. 5).

The Debtor filed a Chapter 7 petition in bankruptcy on August 26, 2009. (See Case No. 09-26239-JAD, Doc. #1). Within the statutory time frame the Plaintiff filed the instant Complaint seeking recovery of the Security from the

Landlord. (See Adv. No. 10-2143-JAD, Doc. #1, *Complaint*).[1] Attached to the Complaint, is an assignment of the cause of action to the Plaintiff, as successor to the Debtor's interest in Miss Mary's. (See Doc. #1, "Exhibit A").

Following the filing of the Landlord's *Answer to Complaint*, the parties filed a Joint Pre-Trial Statement and their respective pre-trial memoranda. Attached to the *Plaintiff's Pre-Trial Memorandum*, was a ratification pursuant to Fed.R.Civ.P. 17(a)(3), acknowledging the assignment the instant cause of action to the Plaintiff. (See Doc. #14, "Exhibit A").

A hearing was held on September 21, 2010, after which this Court took the matter under advisement and requested post-trail briefing from the parties. The parties' post-trial briefs and a response[2] thereto have been filed and this matter is now ripe for determination.

## II.

As a threshold matter this Court must first determine whether the Plaintiff has standing to bring the cause of action asserted in the Complaint.

The Plaintiff is asserting the claim on behalf of the individual Debtor as the result of an assignment of the cause of action from the LLC in which the Debtor was a sole member. The Landlord challenges the validity of Miss Mary's

---

[1] All subsequent references to the docket refer to Adversary Proceeding #10-2143-JAD unless otherwise noted.

[2] Counsel for the Landlord did not file a brief in response to the Plaintiff's Post-Trial Brief.

assignment alleging that other creditors of Miss Mary's may have an interest in any recovered funds. (See Doc. #9, *Answer*, ¶¶ 13-14).

Despite the Landlord's allegations, the Plaintiff has been confirmed as the proper party in interest pursuant to the ratification executed by the Debtor on behalf of Miss Mary's. (See Doc. #14, "Exhibit A"). Federal Rule of Civil Procedure 17(a)(3) (as adopted by Fed.R.Bankr.P. 7017), allows a party who would normally be without standing to obtain ratification from a real party interest, and states that, "such ratification . . . shall have the same effect as if the action had been commenced in the name of the real party in interest." PM Factors, Inc. v. Kreisel (In re Kreisel), 399 B.R. 679 (Bankr. C.D. Cal. 2008) (quoting Fed. R. Civ. P. 17(a)).

Further, pursuant to 11 U.S.C. §§ 541 and 323 the Plaintiff succeeds to any cause of action maintained by the Debtor at the time of the Debtor's bankruptcy filing. See Paul v. Coca-Cola Enters., Inc., Civil Action No. 06-796, 2007 WL 1451663, at *2 (W.D. Pa. May 15, 2007) (holding that a Chapter 7 trustee has sole authority to pursue a cause of action which existed at the time the Chapter 7 petition was filed) (citations omitted). As Miss Mary's has ratified the standing of the Plaintiff (through the person of the Debtor), the Plaintiff is now the "proper party in interest" to pursue the cause of action for turnover of assets allegedly

belonging to the Debtor's estate through her sole membership interest in Miss Mary's.[3]

### III.

In an effort to recover the Security, the Plaintiff has asserted no fewer than three mutually exclusive theories of recovery. First, the Plaintiff alleges that the Landlord is seeking an impermissible "double remedy" by sending the Termination Letter, whereby it obtained possession of the Leased Premises and the Security. Alternatively, the Plaintiff alleges that Miss Mary's surrendered the Leased Premises, and that the surrender was accepted by the Landlord, either expressly through the Termination Letter, or impliedly by reletting the premises to Geico. Finally, the Plaintiff alleges that Geico constitutes a "replacement tenant" under the terms of the Addendum, and the Security should be returned according to one of two possible set-off calculations. (See Doc. #26, p. 5). Each of the alleged grounds for recovery fail for the reasons set forth below.

### A.

Both the fourth and fifth grounds must fail as the facts do not support a finding that Miss Mary's properly availed itself of the "election not to continue" the Lease outlined under the Addendum. The Lease did not provide for Miss Mary's early termination or "cancellation" of the Lease, other than in writing following completion the first full year of the Lease. (See Plaintff's Ex. 2, Section 3.01(b)).

---

[3] Despite the allegations in the pleadings and post-trial brief, counsel for the Landlord appeared to concede the validity of the ratification at trial. (Hr'g Tr. 47, lns. 14-16).

The Plaintiff admits that she never provided the requested written notice. (Hr'g Tr. 37, lns. 14-17). Therefore, Miss Mary's failed to trigger the terms of the Addendum regarding a "replacement tenant."

### B.

The Plaintiff's second and third theories of recovery must also be rejected. The Plaintiff has the burden of proving by clear and convincing evidence that the Landlord "accepted" Miss Mary's alleged surrender of the Leased Premises. Titus & McConomy, LLP v. TrizecHahn Gateway, LLC (In re Titus & McConomy, LLP), 375 B.R. 165, 171 (Bankr. W.D. Pa. 2007) (citing Stonehedge Square, L.P. v. Movie Merchants, Inc., 685 A.2d 1019, 1023 (Pa.Super.1996), aff'd, 552 Pa. 412, 715 A.2d 1082 (Pa. 1998)). The Plaintiff has failed to meet her burden in this respect.

As purported evidence of the Landlord's "acceptance" Miss Mary's presents two alternate theories. The first is that the Landlord expressly accepted Miss Mary's abandonment by issuing the Termination Letter. This Court does not see how the Plaintiff can assert the Landlord intended to accept Miss Mary's surrender and release Miss Mary's from liability under the Lease based on the language of the Termination Letter which clearly states that, "[A]ll . . . rights, remedies, deposits and security are hereby converted to the Landlord in accordance with the terms of your lease...." (Plaintiff's Ex. 4). The case law in Pennsylvania is clear that for express acceptance of a tenant's surrender to occur there must be some form of assent or agreement between the parties orally or in writing. See Ralph

v. Deiley, 141 A. 640, 642 (Pa. 1928); see also Hirsh v. Carbon Lehigh Intermediate Unit #21, 65 Pa. D. & C.4th 390, 413-14 (Pa.Com.Pl. 2003) (holding that a landlord's letter which terminated a lease while demanding accelerated rent did not constitute acceptance of a tenant's surrender). The Termination Letter is simply void of any indication that the Landlord's approved of the alleged "surrender" by Miss Mary's.

Alternatively, the Plaintiff insists that by amending its lease to allow Geico to enter the Leased Premises, the Landlord implicitly "accepted" Miss Mary's surrender of the premises. Based on the facts of record and relevant case law, this Court also disagrees with this proposition. Nothing prevents a landlord from reletting an abandoned space in an attempt to mitigate damages. See Ralph, at 643. In fact, the Lease explicitly provides for Landlord's ability to relet as a remedy for any default or breach of the Lease. (See Plaintiff's Ex. 1, Section 13.03(a)(ii)).

The fact that the Landlord re-let the Leased Premises to Geico for a term which extended beyond the original term of Miss Mary's Lease, is not conclusive evidence that the Landlord accepted Miss Mary's surrender of the Leased Premises. See In re Peters, No. 03-11077DWS, 2004 WL 1291125, at *4 (Bankr. E.D. Pa. May 7, 2004) (citing Brill v. Haifetz, 44 A.2d 311, 313 (Pa.Super. 1945)). In addition, the case law in Pennsylvania clearly holds that the Landlord did not have a duty to protest Miss Mary's abandonment of the Leased Premises or to

notify Miss Mary's that it was reletting the Leased Premises. See Titus & McConomy, 375 B.R. at 172 (citing Ralph, 141 A. at 642). In sum, the Plaintiff has failed to carry her burden of proving that by sending the Termination Letter or by reletting the Leased Premises to Geico, the Landlord intended to accept Miss Mary's alleged surrender.

### C.

Finally, the Plaintiff's first theory of recovery argues that the Termination Letter seeks an impermissible "double remedy" by effectively barring Miss Mary's from the Leased Premises and converting the Security for the Landlord's benefit. The Plaintiff appears to ground this argument in a staple provision of Pennsylvania law which provides that a landlord may be entitled to cumulative remedies in a lease, but not double remedies "in so far as they are conflicting or antagonistic." Greco v. Woodlawn Furniture Co., 99 Pa.Super. 290, 292 (Pa.Super. 1930) (citing Purvis v. Dempsey, 238 Pa. 173 (Pa. 1913); Murphy v. Marshell, 179 Pa. 516 (Pa. 1897)). Based on the specific facts in this case, this argument must be rejected as the Landlord does not appear to be attempting to effectuate a "conflicting" or "double" remedy in the instant matter.

As of December 3, 2008, the evidence of record suggests that Miss Mary's was in default of the Lease in at least three respects: 1) failure to make rental payments within 5 days of the date when due (Section 13.01(ii)); 2) failure to continue to operate the business prior to the conclusion of the initial lease term

(Section 13.01(i)); and 3) removal of personal property from the Leased Premises without prior approval from the Landlord (Section 13.01(v)). As Miss Mary's was in breach of the Lease, the Landlord had the ability to collect damages for the breach and had the option to terminate. (See Plaintiff's Ex. 2, Section 13.02; Plaintiff's Exhibit 1, Section 13.03(a)(i)).

While the language of the Termination Letter presents a close case because it states that, "as of the above date [i.e., December 3, 2008] your lease is hereby terminated..." this Court disagrees with the Plaintiff by finding that the Termination Letter did not effectively exclude Miss Mary's from the Leased Premises. In reaching this conclusion, the Court finds Chief Judge Lancaster's opinion in Kingsly Compression, Inc. v. Mountain V Oil & Gas, Inc., Civil Action No. 09-0316, slip. op. (W.D. Pa. Nov. 30, 2010), 2010 WL 4929076, and the Court of Common Pleas decision cited therein, Hirsh v. Carbon Lehigh Intermediate Unit #21, 65 Pa. D. & C.4th 390 (Pa.Com.Pl. 2003), both persuasive and instructive.

In Kingsly Judge Lancaster held that the risk of double remedy is not present when the lessee has voluntarily relinquished possession of the leased property, because the lessor is not asking the court to award both possession and accelerated rent. Kinglsy, 2010 WL 4929076, at *7. While factual distinctions exist, the Court finds Judge Lancaster's analysis applicable to the instant matter.

First, there does not appear to be a "double remedy" because the Landlord has not sought to bar Miss Mary's from the Leased Premises. In fact, the Debtor

admitted her intent to terminate the Lease <u>prior</u> to the drafting and delivery of the Termination Letter. It is undeniable that Miss Mary's ceased its business operations and voluntarily began to relinquish possession of the Leased Premises prior to the Termination Letter. (Hr'g Tr. 11, lns. 7-11; Hr'g Tr. 17, lns. 7-17). Even more importantly, the Debtor has never insisted that she planned to re-start the business operations of Miss Mary's or intended to re-take the Leased Premises. As Miss Mary's had already closed its business operations and commenced vacating the Leased Premises <u>prior</u> to the delivery of the Termination Letter, it is clear that "the [L]andlord's letter was not tantamount to an eviction." <u>Hirsh</u>, 65 Pa. D. & C.4th at 418.

Therefore, the Landlord is entitled to collect cumulative damages (including accelerated rent), for Miss Mary's breach of the Lease. In this instance the damages for breach were clearly outlined in the Addendum by Section 13.02, as the lesser of $24,500 or accelerated rent for the remaining term.[4] (<u>See</u> Plaintiff's Ex. 2, Section 13.02). From the terms of the Lease and Addendum as well as from the testimony of the parties it is clear that this damages amount was negotiated at arms length prior to the commencement of the lease. (Hr'g Tr. 22-24; Hr'g Tr. 62-63). In exchange for putting forth the Tenant's Security, Miss Mary's received the benefit of shortening the term of the Lease from five years to three and limiting

---

[4] The Landlord's representative, Mr. Reginella, indicated at the hearing that the Landlord's might be entitled to additional damages under the Lease and Addendum because Miss Mary's defaulted within the first year of the Lease. (Hr'g Tr. 107-108). However, the Landlord appears to have elected not to pursue these additional claims. (Hr'g Tr. 108-110).

its potential damages for breach or abandonment to one-year's rent as opposed to the accelerated balance for the remaining term as would have been allowable under Pennsylvania Law.[5]

In addition, Miss Mary's also received the benefit of being able to elect to cancel the lease at its option without liability for any continuing rent if a "replacement tenant" were to occupy the Leased Premises. (See Plaintiff's Ex. 2, Section 3.01(b)). The record indicates that Miss Mary's was represented by counsel both prior to and following her occupation of Leased Premises. The Landlord should not be required to disgorge any amounts due under the provision simply because Miss Mary's failed to properly elect the option to cancel the remaining lease term.

### D.

As a result, this Court holds that the Landlord is permitted to retain the damages for Miss Mary's breach outlined under the Lease and Addendum that it freely contracted for. Further, as Miss Mary's voluntarily ceased business operations and began vacating the Leased Premises in November of 2008, the evidence shows it was the Debtor's choice that caused Miss Mary's to vacate the Lease Premises, not the Termination Letter. As Miss Mary's attempted to unilaterally terminate the Lease after defaulting, it cannot be said that the

---

[5] Additionally Debtor admitted that the negotiation of the Tenant's Security relieved her of the requirement that both the Debtor and her husband guarantee the Lease. (Hr'g Tr. 23, lns. 8-16).

Landlord was seeking a "double remedy" by retaining damages in the form of the Security. Therefore the Landlord is not required to refund any of the $28,583.33[6] amount deposited.

## IV.

As a final matter, certain additional claims between the parties must be addressed. First, in addition to unpaid rent for November and December of 2008, the Landlord claims it is entitled to offset unpaid taxes, utilities and certain additional costs associated with reletting the Leased Premises from the Deposit and Tenant's Security amounts. While the Debtor admits that Miss Mary's failed to pay utilities and taxes from November of 2008 onward, there is no evidence of record as to what those amounts were. Also, the Landlord failed to present any admissible evidence[7] demonstrating the cost of reletting the Leased Premises. (Hr'g Tr. 73-74). Therefore, any alleged "losses" the Landlord incurred as a result of reletting the Leased Premises cannot recovered from the Plaintiff.

Second, the Plaintiff has included in her Complaint a request for attorney fees and interest at the statutory rate beginning November 30, 2009. (*Complaint*,

---

[6] Section 13.02 of the Addendum allows the Landlord to retain the Tenant's Security amount of $24,500. (See Plaintiff's Ex. 2). The Deposit amount of $4,083.33 may also be retained as it is undisputed that Miss Mary's has not "fulfilled [its] obligations under the Lease" as required by Section 3.01(b) of the Addendum. (See id.).

[7] The Landlord did attempt to present a series of invoices purporting to outline the cost of reletting the space to Geico. However, the evidence was not produced during the discovery period and was not presented two weeks prior to trial as required by the terms of the Joint Discovery Plan. As a result the purported evidence was excluded. (Hr'g Tr. 74, lns. 4-11).

¶18). As the Plaintiff has failed to prevail in this action, the Plaintiff's requests for attorney's fees and costs as well as for statutory interest will be denied.

An Order consistent with this Opinion will follow.

Dated: February 15, 2011

_____
JEFFERY A. DELLER
U.S. Bankruptcy Judge

cc:   Owen W. Katz, Esq.
      Jeffrey R. Lalama, Esq.
      Natalie Lutz Cardiello, Esq.
      Office of the U.S. Trustee

**FILED**

FEB 15 2011

CLERK, U.S. BANKRUPTCY COURT
WEST. DIST OF PENNSYLVANIA